## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) CIVIL ACTION: |
| | ) |
| | ) SECTION: |
| Plaintiff, | ) |
| | ) JUDGE |
| VERSUS | ) |
| | ) MAGISTRATE JUDGE |
| TEXAS BRINE COMPANY, LLC and WICHITA PARTNERSHIP, LTD., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Zurich American Insurance Company ("Zurich"), by and through its attorneys, for its Complaint for Declaratory Judgment, alleges as follows:

## INTRODUCTION

1.  This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, to determine and resolve questions of actual controversy involving insurance policies issued by Zurich under which Texas Brine Company, LLC ("TBC") claims to be entitled to coverage.

2.  Zurich seeks a declaration regarding its duty to defend or indemnify TBC, if any, for claims asserted against it in an action captioned *Wichita Partnership, Ltd v. Texas Brine Company, LLC, et al.*, C-145145, 17th Judicial District Court, Lafourche Parish, Louisiana (the "Underlying Lawsuit").

3.  Zurich also sues defendant Wichita Partnership, Ltd ("Wichita") to bind it to the judgment herein.

## PARTIES

4.  Zurich is a corporation organized under the laws of the State of New York with its principal place of business in Schaumburg, Illinois.

5. TBC is a Texas limited liability company with its principal place of business in the State of Texas.

6. Upon information and belief, TBC has the following individual members, all of whom are Texas residents: Camille W. Tichenor, Lloyd P. Webre, Jr., Mary Iris Webre, Roberta W. Rude, and James H. Tichenor.

7. Upon information and belief, TBC also has the following limited partnership members: Camille Tichenor, LP; Lloyd Webre, LP; Mary Webre, LP; and Roberta Rude, LP.

8. Upon information and belief, the members of Camille Tichenor, LP are: Elizabeth Greening, a Texas resident; Francis Iris Allen, a Texas resident; the Estate of Mary Metzinger, whose executor is John Metzinger, a North Carolina resident; and Camille Tichenor, a Texas resident.

9. Upon information and belief, the members of Lloyd Webre, LP are the Courtney Webre Trust, the Nancy Webre Trust, and Lloyd Webre, Jr., a Texas resident; the trustee of the Courtney Webre Trust is Robert Duboise, a Texas resident; the beneficiary of the Courtney Webre Trust is Courtney Webre, a Texas resident; the trustee of the Nancy Webre Trust is Robert Duboise, a Texas resident; and the beneficiary of the Nancy Webre Trust is Nancy Webre, a Texas resident.

10. Upon information and belief, the members of Mary Webre, LP are the James Dobson Trust and Mary Webre, a Texas resident; the trustee of the James Dobson Trust is Robert Duboise, a Texas resident; and the beneficiary of the James Dobson Trust is James Dobson, a Texas resident.

11. Upon information and belief, the members of Robert Rude, LP are the David H. Rude Trust; the Robert L. Rude Trust; Roberta Rude, a Texas resident; the trustee of the David H.

2

Rude Trust is Robert Duboise, a Texas resident; and the beneficiary of the David H. Rude Trust is David H. Rude, a Texas resident.

12. Upon information and belief, TBC also has the following trusts as members: the Elizabeth Greening 2011 Trust, the Frances Iris Allen 2011 Trust, the Rachel Metzinger 2011 Trust, the Amy Metzinger 2011 Trust, the Webre Family Trust, the David Hayner Rude 2011 Trust, and the Robert Lloyd Rude 2011 Trust.

13. Upon information and belief, the trustee of the Elizabeth Greening 2011 Trust is Elizabeth Greening, a Texas resident; and the beneficiary of the Elizabeth Greening 2011 Trust is Elizabeth Greening, a Texas resident.

14. Upon information and belief, the trustee of the Frances Iris Allen 2011 Trust is Francis Iris Allen, a Texas resident; and the beneficiary of the Frances Iris Allen 2011 Trust is Francis Iris Allen, a Texas resident.

15. Upon information and belief, the co-trustees of the Rachel Metzinger 2011 Trust are Elizabeth Greening and Francis Iris Allen, both Texas residents; and the beneficiary of the Rachel Metzinger 2011 Trust is Rachel Metzinger, a North Carolina resident.

16. Upon information and belief, the co-trustees of the Amy Metzinger 2011 Trust are Elizabeth Greening and Francis Iris Allen, both Texas residents; and the beneficiary of the Amy Metzinger 2011 Trust is Amy Metzinger, a North Carolina resident.

17. Upon information and belief, the trustee of the Webre Family Trust is Robert W. Sneed, a Texas resident; and the beneficiary of the Webre Family Trust is Arnold J. Webre, a Texas resident.

18. Upon information and belief, the trustee of the David Hayner Rude 2011 Trust is Robert Duboise, a Texas resident; and the beneficiary of the David Hayner Rude 2011 Trust is David Hayner Rude, a Texas resident.

19. Upon information and belief, the trustee of the Robert Lloyd Rude 2011 Trust is Robert Duboise, a Texas resident; and the beneficiary of the Robert Lloyd Rude 2011 Trust is Robert Lloyd Rude, a Texas resident.

20. Accordingly, pursuant to applicable law and upon information and belief, TBC is a resident Texas and North Carolina, and TBC and its members are not incorporated in, do not maintain their principal place of business in, and are not residents of New York or Illinois for purposes of diversity jurisdiction.

21. Upon information and belief, Wichita is a Texas limited partnership with its principal place of business in Texas.

22. Upon information and belief, Wichita's sole general partner is Wichita LM Properties LLC with its principal place of business in Texas.

23. Upon information and belief, Lannie Mecom, a Texas resident, is the owner of Wichita and Wichita LM Properties LLC.

24. Accordingly, pursuant to applicable law and upon information and belief, Wichita is a resident Texas, and is not incorporated in, does not maintain its principal place of business in and is not a resident of New York or Illinois for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

25. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the citizenships of the plaintiff and defendants are diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

26. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because one or more defendants are residents of Louisiana pursuant to 28 U.S.C. § 1332(d).

27. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## THE UNDERLYING LAWSUIT

28. The Underlying Lawsuit arises from claims for pollution damage within the Eastern District of Louisiana. A copy of the Petition and Amended Petition in the Underlying Lawsuit are attached hereto as Exhibits A and B, respectively.

29. Wichita alleges that it owns property in the Chacahoula Field, Lafourche Parish, Louisiana that was damaged as a result of TBC's brine mining operation on the property.

30. Wichita alleges that TBC operated multiple salt caverns on the property that have leaked and continue to leak toxic chemicals that have damaged the soil and groundwater.

31. Wichita alleges that TBC's failure to responsibly and timely remove or remediate toxic pollution in the soils and groundwater of the property has allowed the pollution to migrate and spread, and defendants have permanently damaged the drinking water and other aquifers underlying the field.

32. Wichita alleges that TBC "knew for many years that it was disposing, storing, discharging, and otherwise releasing toxic poisons and pollutants onto and into the ground, groundwaters, and surface waters on or near plaintiff's property."

33. Wichita seeks damages including funds to conduct a scientific analysis of the extent and nature of the contamination associated with defendants' operation; the cost to restore the property to its pre-polluted condition; punitive damages; unauthorized use of the land to store and dispose of wastes; stigma and diminution in property value; trespass and

nuisance; if appropriate, land loss, subsidence damages, and the cost of excavations; loss of use of land and lost profits; remediation of any groundwater contamination; unauthorized disposal and injection of off-site saltwater or brines or other fluids or chemicals; and unauthorized disposal of other wastes into the soils or the subsurface.

34.     In its First Supplemental and Amending Petition for Damages, Wichita alleges that since the inception of operations in 1979, defendants knew or should have known that unlined or improperly lined brine pits on the property were likely to leak and seep beyond the horizontal and vertical confines of their pits, and that the environmental damage began at the inception of the defendants' brine mining operations on the property in 1979 and has continued to the present time.

## THE ZURICH POLICIES

35.     Zurich issued Commercial General Liability policy number GLO 9382139-00 to Texas United Corporation ("Texas United") for the policy period March 1, 2009 to March 1, 2010.

36.     Zurich issued Commercial General Liability policy number GLO 9382139-01 to Texas United for the policy period March 1, 2010 to March 1, 2011.

37.     Zurich issued Commercial General Liability policy number GLO 9382139-02 to Texas United for the policy period March 1, 2011 to March 1, 2012.

38.     Zurich issued Commercial General Liability policy number GLO 9382139-03 to Texas United for the policy period March 1, 2012 to March 1, 2013.

39.     Zurich issued Commercial General Liability policy number GLO 9382139-04 to Texas United for the policy period March 1, 2013 to March 1, 2014.

40. The above-referenced Zurich policies are collectively referred to herein as the "Zurich Policies."

41. Texas Brine claims to be an insured under the Zurich Policies.

42. Subject to all of their terms, the Zurich Policies provide coverage for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. Zurich will have the right and duty to defend the insured against any "suit" seeking those damages, but Zurich will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which the insurance does not apply. Zurich may, at its discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

43. The Zurich Policies apply to "property damage" only if the "property damage" is caused by an "occurrence"; the "property damage" occurred during the policy period; and prior to the policy period no insured and no "employee" authorized to give or receive notice of an "occurrence" or claim knew that the "property damage" had occurred, in whole or in part.

44. "Property damage" is defined in the Zurich Policies as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."

45. "Occurrence" is defined in the Zurich Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

46. The Zurich Policies are endorsed with a Total Pollution Exclusion Endorsement, which states in part as follows:

> This insurance does not apply to:
>
> f.   Pollution

7

      (1)    "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

      (2)    Any loss, cost or expense arising out of any:

            (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants"…

47.    "Pollutants" are defined in the Zurich Policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

48.    The Zurich Policies exclude coverage for any "property damage" that was expected or intended from the standpoint of the insured.

49.    The Zurich Policies exclude coverage for any "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

50.    The Zurich Policies exclude coverage for any "property damage" to property the insured owns, rents, or occupies, including any costs or expenses incurred by the insured or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

51.    The Zurich Policies exclude coverage for any "property damage" to that particular part of real property on which the insured or any contractors or subcontractors working directly or indirectly on behalf of the insured are performing operations, if the "property damage" arises out of those operations.

52. There is no coverage under the Zurich Policies to the extent that any Zurich policy's limit of liability has been exhausted.

53. Any coverage under the Zurich Policies is excess of any other valid and collectible insurance available to the insured.

54. Pursuant to a full and complete reservation of all rights, Zurich has agreed to pay a *pro rata* share of TBC's defense costs in the Underlying Lawsuit pursuant to *Arceneaux v. Amstar Corp.*, 200 So. 3d 277 (La. 9/7/16), and Zurich has consented to TBC's selection of independent counsel to defend the Underlying Lawsuit.

## COUNT I: DECLARATORY JUDGMENT
**(Zurich Does Not Have a Duty to Defend)**

55. Zurich incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

56. Zurich seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that pursuant to the terms, conditions and exclusions in the Zurich Policies it has no duty to defend TBC in the Underlying Lawsuit.

57. There exists an actual, justiciable controversy between Zurich and defendants with respect to the request for relief sought herein.

## COUNT II: DECLARATORY JUDGMENT
**(Alternatively, Zurich's Duty to Defend is Limited to a *Pro Rata* Share)**

58. Zurich incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

59. In the alternative, Zurich seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that pursuant to *Arceneaux v. Amstar Corp.*, 200 So. 3d 277 (La. 9/7/16), any Zurich obligation to defend TBC is limited to Zurich's *pro rata* share of

defense costs determined by the time period during which Zurich was on the risk divided by the total applicable potentially triggered time periods.

60. Plaintiff's petitions allege property damage over forty-four (44) annual policy periods, from 1979 through the present.

61. As set forth above, Zurich insured TBC under the five primary policies, in effect from March 1, 2009 to March 1, 2014.

62. Therefore, after TBC's satisfaction of all deductibles, Zurich seeks a declaration that pursuant to *Arceneaux*, *supra*, its *pro rata* share of reasonable and necessary defense costs is five forty-fourths, or 11.36%.

63. There exists an actual, justiciable controversy between Zurich and defendants with respect to the request for relief sought herein.

## COUNT III: DECLARATORY JUDGMENT
### (Zurich Does Not Have a Duty to Indemnity)

64. Zurich incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

65. Zurich seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that pursuant to the terms, conditions and exclusions in the Zurich Policies it has no duty to indemnify TBC in the Underlying Lawsuit.

66. There exists an actual, justiciable controversy between Zurich and defendants with respect to the request for relief sought herein.

67. Zurich demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Zurich respectfully requests that this Court enter judgment in its favor and against defendants as follows:

10

  a. That the Court enter judgment for Zurich on Count I and declare that there is no duty to defend TBC under the Zurich Policies;

  b. In the alternative, that the Court enter judgment for Zurich on Count II and declare that any Zurich duty to defend under the Zurich Policies is limited to 11.36%;

  c. That the Court enter judgment for Zurich on Count III and declare that there is no duty to indemnify TBC for the Underlying Lawsuit under the Zurich Policies; and

  d. For such other and further relief as the Court deems appropriate.

DATED this 27th day of February, 2023.

          Respectfully submitted,

          */s/ Glen E. Mercer*
          **SALLEY, HITE, MERCER, & RESOR, LLC**
          **GLEN E. MERCER (#21752)**
          **KOURTNEY N. TWENHAFEL (#26736)**
          365 Canal Street, Suite 1710
          New Orleans, Louisiana 70130
          Phone: (504) 566-8800
          Fax: (504) 566-8828
          *Attorneys for Zurich American Insurance Company*